## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

LISA KOHLHAGEN,
Plaintiff

v.

TRACY SPARKS,
Defendant

:
:
:
:
:
:
:
:
:
:

C.A.# CPU6-25001663

## COMMISSIONER'S PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND PLAINTIFF'S MOTIONS TO NOTIFY THE COURT OF SUSPECTED PERJURY AND FOR APPROPRIATE RELIEF AND PLAINTIFF'S MOTION FOR SANCTIONS FOR MISREPRESENTATION REGARDING SETTLEMENT

These matters came before the Court for a hearing on November 18, 2025. After each side presented their evidence and argument, the Court reserved decision.

PROCEDURAL HISTORY:

On July 2, 2025, Plaintiff filed an action against Defendant requesting monetary damages for discrimination and emotional distress. The underlying facts relate to Defendant's actions as manager of the Homeowners Association (HOA). Plaintiff claims Defendant's failure to act relating to her complaints regarding ADA compliance in the neighborhood resulted in unlawful discrimination and emotional distress.

After service of the Complaint on July 28, 2025, Defendant filed an Answer, Notice of Affirmative Defenses, and Counterclaim on August 5, 2025. Defendant's Answer contained a general denial of the allegations enumerated in the Complaint and notification of Affirmative Defenses. Notably to the matters at hand, Defendant stated as an employee she cannot be held

1

**EXHIBIT III**

personally liable for the actions of her employer. The Counterclaim expands on this notion and claims that as an employee of the developer it is improper to make individual claims against her. Defendant claims abuse of the civil process and requests compensation for the inconvenience incurred as a result. Importantly, on August 5, 2025, Defendant's attorney filed an Entry of Appearance stating his name, physical address, and email address of leeramunno@AOL.com.

On August 8, 2025, Plaintiff filed an Answer to Defendant's Counterclaim. She denied the allegation Defendant was an employee of an entity, but admits Defendant was the manager of the HOA. Further, Plaintiff states that under the Fair Housing Act, the Americans with Disabilities Act, and applicable State law, individuals may be held responsible for discriminatory acts if they are in a position of authority. In paragraph 5, Plaintiff argues it is inconsistent for Defendant to claim to be an employee and a volunteer. An addendum paragraph labeled Civil Abuse flips the script and claims civil abuse by the Defendant for abuse of position, abuse of process under the HOA rules, and harassment and intimidation by encouraging hostile behavior by others against the Plaintiff. A Notice of Service is attached to the Answer to Counterclaim showing Plaintiff delivered the document by e-file, first class mail, and as an **email to the address of Defendant's Counsel.**[1]

Also on August 8, 2025, Plaintiff filed a document entitled Evidence Report. The opening section claims the report shows deliberate discrimination by the HOA since January of 2025. The Report includes as attachments screen shots of text exchanges between Plaintiff and several other people, as well as a general text exchange circulated in a neighborhood chat. The Proof of Service

---

[1] On August 11, 2025, Plaintiff filed a second Response to Defendant's Counterclaim. This Response is identical to the previous response with two exceptions. It is typed in a different font and the affirmative statement section and civil abuse sections are combined in the second document under the heading "Affirmative Statement". Both Responses to Counterclaim filed by the Plaintiff were emailed to the address of Defense Counsel.

attached to this filing indicates it was mailed by first class mail to the address of the law firm representing Defendant.

A Pretrial Conference (Pretrial) was scheduled in this matter for November 18, 2025, and notices were sent to the parties. Prior to the Pretrial, Defendant filed a Motion to Enforce Settlement Agreement on October 20, 2025 stating email exchanges between the parties constituted a valid offer and acceptance. The relevant email exchange was attached to the Motion and Response. See Exhibits attached to Plaintiff's Motion for Sanction for Misrepresentation Regarding Settlement (4 pages) and Exhibits I, II, and III attached to Defendant's Motion to Enforce Settlement Agreement.

Eight minutes later, Plaintiff filed a Motion to Notify the Court of Suspected Perjury and for Appropriate Relief. In the Motion, Plaintiff claims to posses direct evidence showing that the Defendant knowingly made false statements regarding her role as an employee of Lenape Property Management. Plaintiff states the evidence shows she claimed to be a volunteer for the HOA in correspondence. Plaintiff demands the Court take judicial notice of the contradictory statements, strike these statements from the Counterclaim, impose appropriate sanctions, and refer the matter to the Department of Justice for review. Several documents including screen shots of conversations and a written statement by a witness are provided to support this claim.

Minutes later, Plaintiff filed a Reply in Opposition to Defendants' Motion to Enforce Settlement. In the Reply, Plaintiff denies there was an enforceable agreement as any offer to settle the matter was only related to Lenape Properties and not Defendant Sparks. Additionally, Plaintiff argues there was no meeting of the minds as to a resolution so there can be no enforceable settlement. Two things are significant about this reply. Plaintiff for the first time included Lenape Properties in the caption of the case, but Lenape Properties is not a party to this action. Plaintiff

in the caption of the Reply refers to Defendants (plural) despite only bringing this action against one individual. Additionally, Plaintiff acknowledged in open court she was corresponding with Mr. Rumunno, Sr. relating to settlement. The Reply does not include a Certificate of Service, so there is no evidence that it was shared with Defendant and her counsel.

Later on October 21, 2025, Plaintiff filed a Motion for Sanctions for Misrepresentation Regarding Settlement. This Motion accuses Mr. Rumunno of making false and misleading representations concerning settlement. This document does not discuss the employment status of the Defendant at any time, it is simply a spurious attack on Mr. Rumunno's credibility and truthfulness before the Court. This document includes a Certificate of Service stating it was sent by email to Defendant's Counsel.

On October 30, 2025, Plaintiff replied by letter to the Court regarding Defendant's Opposition to Plaintiff's Motion on Suspected Perjury and Sanctions. In the letter, Plaintiff's Counsel addresses the argument that Plaintiff is an employee of Lenape Properties and manages projects for the developer. Mr. Rumunno denies any perjurious statements were made in the pleadings submitted. A footnote informs the Court that there is a similar Federal Court matter against several entities involved in this matter and the Defendant was the only one singled out for State Court resolution.

Plaintiff replied to Defendant's October 30, 2025 letter on November 3, 2025. Plaintiff's November 3 reply clearly states she does not believe the allegations of perjury against Defendant and her attorney are not frivolous. She argues that any position that does not align exactly with her interpretation of the facts in this matter must be perjury. There is no ability to argue any alternative to her narrative based on the existing facts and to attempt to do so constitutes perjury. She demands a judicial review and sanctions.

Finally, on November 18, 2025, the Court held a hearing on the Motion submitted by the parties.[2]

FACTS AND DISCUSSION DURING THE HEARING:

It appears from the documents presented by both sides Plaintiff purchased a home built by Ryan Homes in the Mearfield development in Seaford, Delaware. The developer of the project was Liborio Watergate, LLC, which is owned by Lenape Properties Management. Included in the neighborhood is a common clubhouse and pool area. In 2024, after purchasing her home, Plaintiff made the HOA aware of accessibility issues for the pool, the clubhouse, and her driveway. Some remediation was attempted on the driveway but may not have solved the problem.

Defendant is an employee of Lenape Properties Management and was involved in overseeing the project. She may have also been the developer's representative on the HOA board. Plaintiff brought the accessibility issues to the attention of Defendant and requested they be resolved so that she may enjoy the use of the community amenities. It is unclear at this time whether Plaintiff believed she was notifying the HOA, the developer, the builder of her home, or all three. That issue is not relevant to this discussion and will be a matter for a Judge to decide at trial.

Central to the Court's consideration here is what was transmitted to Defendant's attorney and what was Plaintiff's intention when it was transmitted. Mr. Rumunno and his firm represent

---

[2] On December 3, 2025, Plaintiff filed a Letter with the Court requesting all future appearances be by Zoom. In that letter, Plaintiff states she was denied access to her ADA support aid after she informed the Court their presence was necessary. Further, Plaintiff states she was denied the use of her TBI glasses that are medically necessary to read documents. A review of the tape of the hearing in this matter does not reveal Plaintiff asked for her ADA support aid until late in the hearing and that request was granted immediately. As to her TBI glasses, the recording of the hearing does not have any reference by Plaintiff to glasses. Both parties requested to appear by Zoom. The parties were both required to appear in person because these matters were deemed too complicated and too contentious to address by video. The Court will in future matters, as it did during this hearing, take into account any needs or requests by Plaintiff.

Defendant in this matter and Lenape Properties in the pending Federal Court matter. As of November 18, 2025, Lenape Properties had not been served in the Federal case.

In this case, Mr. Rumunno filed an Entry of Appearance on behalf of his law firm and provided contact information for himself and the firm. On October 3, 2025 Plaintiff sent an email to the address listed by Defendant's Attorney. The subject of the email was "Status and Direction – Lenape Properties / HOA Case." At this time, Lenape Properties had not been served in the Federal Case and this State case was the only relevant matter pending. The email states any resolution must include three very specific actions. If these terms were not offered as part of a settlement, then Plaintiff was ready to start deposing Lenape and HOA employees.

Defendant responded within two hours that the offer to resolve the matter was accepted on the terms stated. Included with the email was some internal discussion that this was a good resolution since it dropped the request for monetary damages. In discussing the letters of apology on the internal thread, Defendant is specifically mentioned clearly demonstrating Counsel thought this was an offer to resolve the case in State Court. The acceptance sent to Plaintiff clearly accepts the terms and states further discussion will be necessary to make sure they are adequately covered.

Plaintiff responded after the acceptance that the statement of terms upon which she was willing to settle was not made in the State Case relating to Tracy Sparks. Because Defendant was her point of contact, she wants more from her resolution. Her response also demands they cooperate in her suit against an unnamed entity or individual. Counsel then informed Plaintiff that they are bound by ethical duties and may not be able to proceed with the cooperation she demands but the other terms are accepted.

During the hearing, Defendant relied on the email exchange and the fact that only one case was pending at the time to argue that the offer of settlement could only refer to the case against

6

the Defendant. Plaintiff kept arguing that they are perjuring themselves by not accepting her version of events as the only version. Plaintiff admitted she was unaware Defense Counsel would represent any of the parties in the Federal case and only knew of Defense Counsel's involvement in the State case when she sent the email. She argued that her email clearly excepted Defendant from the offer of settlement, but this cannot be correct. She sent the email to an attorney she only knew was involved with the Defendant and the exclusion of Defendant from the offer of settlement only came after Defense Counsel emailed an acceptance of the offer. Additionally, Plaintiff had sent items to defense counsel in the State case using this email in the past and was well aware at the time of the offer that Defense Counsel would receive the communication. Plaintiff then claims she sent the email to his law partner and the heading clearly stated to which case this would apply. However, in her October 3, 2025 email at 12:25 pm, Plaintiff clearly stated that all parties would receive the same offer. This email was sent to defense counsel in the State case under the "Lenape Properties / HOA" heading.

This led to discussion of the Plaintiff's Motions for Sanction for alleged perjury. The Court attempted to explain that there is a significant difference between argument on behalf of a client and perjury. The duty of each party is to present their case and the facts that support their case. As an example, the Court told Plaintiff that whether someone was an employee or volunteer rested on the parties providing facts about their involvement and the Court applying the legal definition of employee or volunteer to those facts to decide. Additionally, Plaintiff refuses to recognize the dichotomy that an employee of the developer may serve as a volunteer member of the HOA board.

It was made clear to the Plaintiff that her request for sanctions related to perjury was inappropriate. The Court instructed her that perjury was a very strong accusation, and she had inappropriately made those accusations against Defendant and Counsel. It was further explained

that this Court looked very unfavorably toward uncivil, spurious, and reckless accusations of perjury and if she continued, the Court would consider sanctions against her under Court of Common Pleas Rule 11. Sanctions could include dismissal of her action with prejudice if she continued to hurl "kindergarten playground insults" without cause.[3]

Plaintiff then doubled down with what the Court commented was the worst apology in history. She apologized for claiming Mr. Rumunno committed perjury, but it was his and the Defendant's perjury that made her do it. At this point, the Court attempted to again instruct Plaintiff that perjury and zealous advocacy are not the same, but Plaintiff insisted on interrupting the Court and speaking over the Court to insist that the perjury was real. It was clear after many minutes of trying to explain that Plaintiff refused to listen to any voice but her own and would not stand for any admonishment or guidance regarding proper decorum.

The Plaintiff's hubris was further evident when she claimed in Court that she did not understand she was communicating the offer to Defendant's counsel despite filing Proof of Service on August 8, 2025 and October 21, 2025 certifying a copy of her submission was provided to counsel at the email address involved in this exchange. Also, Rumunno & Rumunno, PA's client in the Federal Court case had yet to be served to initiate those proceedings. It would make no sense to threaten depositions in a case that has yet to begin. Finally, Plaintiff stated during the hearing she did not know that Mr. Rumunno represented Lenape in the Federal Case. It is clear the Plaitniff knew with whom she was corresponding, and exactly what she was requesting, and her argument otherwise is ridiculous.

---

[3] It is important to note that it was explained at length to the Plaintiff there is a significant difference between perjury and persuasive argument. Perjury is an intentional falsehood stated under oath about a material fact. Argument, even if flawed or biased, is simply the persuasive presentation of facts to support your position. Plaintiff was instructed *ad nauseum* the Court had reviewed the submissions of the parties and was firmly convinced defense counsel was arguing his position and had not committed perjury.

ANALYSIS

Plaintiff is proceeding *pro se* and Defendant is represented by counsel and their respective skill levels must be given some weight by the Court. In *Boatswain v. Miller*, 2023 WL 6141312 (Ch. September 20, 2023), the Court summed up how to treat matters litigated by a pro se party. "Although Delaware law affords '*pro se* litigants . . . some leniency in presenting their cases . . . *pro se* litigants must abide by the same rules that apply to other litigants.'" *Lidya Holdings Inc. v. Eksin*, 2022 WL 274679, at \*3 (Del. Ch. Jan. 31, 2022) (quoting *Hayward v. King*, 2015 WL 6941599, at \*4 (Del. 2015) (TABLE). Further, "while the Court may take into consideration a party's *pro se* status, it is not the job of the opposing party." *Boatswain*, at \*3. In evaluating the actions of the parties and whether they concluded a formal agreement, the Court may give some leeway to the *pro se* Plaintiff but will not impart such a requirement on defense counsel.

"To form a contract, the parties must agree to all material terms of the contract. Determining whether a term is material to a contract does not lend itself well to a one-size-fits-all approach." *Shilling v. Shilling*, 332 A.2d 453, 463 (Del. 2024). "It is the 'overt manifestation of assent – not subjective intent – [that] controls the formation of a contract.'" *Shilling*, at 465 (citing *Eagle Force Holdings, LLC v. Campbell ("Eagle Force II")*, 235 A2d 727, 735 (quoting, *Eagle Force Holdings, LLC v. Campbell ("Eagle Force I")*, 187 A.3d 1209, 1229 (Del. 2018).

The email exchange around which this controversy centers occurred on October 3, 2025 at 10:27 am. This email was sent to the address Plaintiff used to communicate with Defendant's attorney in this case and states the subject as the "Lenape Properties and HOA case". In the Compliant filed with the Court, Plaintiff claims in paragraph #2 Defendant acts as the HOA manager of the community. It is understandable that an attorney in Defense Counsel's position would understand this to be an offer of settlement.

"The parties' understanding that the 'contract should be formally drawn up and put in writing [does] not leave the contract incomplete without binding force,' unless there is a *positive agreement* that it should not be binding until so reduced to writing and formally executed." *Shilling*, at 466, *Universal Prods. Co. v. Emmerson*, 179 A. 387, 394 (Del. 1935) (emphasis added). See also, *Grunstein v. Silva* 2014 WL 4473641, at *18 (Del. Ch. September 5, 2014) (finding that the parties' mention of executing a written agreement was not "an unequivocal statement that a written executed contract was a condition precedent to an agreement."), aff'd 113 A.2d 1080 (Del. 2015) (TABLE).

In this case, Defendant clearly considered the Plaintiff's email to be an offer to settle the case and accepted what they believed to be an offer. Plaintiff, however, argues that she thought the communication was with counsel in the Federal Case and not counsel for the Defendant in the State Case. Plaintiff titled her email "Lenape Properties / HOA Case" indicating both the Federal matter and the State Case. Her email did not specify that it only applied to one case. The Federal Case had yet to become active when she sent the email to the address of the State case Defense Counsel. It is not unreasonable for Defense Counsel to conclude that the offer of settlement was made in the pending State Case against Defendant.

As to Plaintiff's argument that she did not intend to form such a contact, a contract may be voided by mutual mistake,

> "To establish a mutual mistake of fact, Garnett must show, 'by clear and convincing evidence that (1) both parties were mistaken as to a basic assumption, (2) the mistake materially affects the agreed-upon exchange of performances, and (3) the party adversely affected did not assume the risk of the mistake.' In assessing whether a mutual mistake exists, the Court considers the relevant circumstances present at the time of contract formation. The mutual mistake 'must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as a result of present facts.'" *Garnett v. Cote*, 2025 WL 40944, *3 (Del. Super. Jan. 7,

2025) (quoting *Hicks v. Sparks*, 2014 WL 1233698, at *2 (Del. Mar. 25, 2014), 2014 WL 1233698 at *2 and *Alvarez v. Castellon*, 55 A.3d 352, 354 (Del. 2012) (quoting *Tatman v. Philadelphia, Baltimore & Washington R.R. Co.*, 85 A. 716, 718 (Del. Ch. 1913))).

The Plaintiff clearly understood with whom she was communicating and the terms she communicated to Defendant's counsel. She cannot show by clear and convincing evidence that she as mistaken as to whom she sent the offer of settlement.

CONCLUSION

Plaintiff sent an offer of settlement to the Defendant's attorney in this case and that offer was accepted without reservation. Plaintiff's arguments against contract formation were spurious and insufficient. The only argument relevant to the discussion is that her email was not intended to be an offer. This argument does not stand as Plaintiff clearly understood with whom she was communicating and clearly communicated her demands in the email.

**THEREFORE, I RECOMMEND** this 16th day of January 2026, that Defendant's Motion to Enforce Settlement Agreement be **GRANTED** and Plaintiff's Motion to Notify the Court of Suspected Perjury, Motion for Appropriate Relief, and Motion for Sanctions for Misrepresentation Regarding Settlement be **DENIED**.

Donald Bucklin
Commissioner

This _____ day of _____, 202___, neither Party having filed objections to the Commissioner's Proposed Findings of Fact, and Recommendations in the above-captioned case, which were set forth in the Commissioner's Report, dated _____ and mailed to

the Parties on said date, the Court hereby accepts the Commissioner's proposed findings of fact, conclusions and recommendations.

**IT IS SO ORDERED.**

_____
JUDGE.