**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**LISA KOHLHAGEN,**
Plaintiff,

**Civil Action No.**
25-1152-MN-LDH

v.

LENAPE PROPERTIES MANAGEMENT, INC.;
LIBORIO WATERGATE, LLC;
MEARFIELD HOMEOWNERS ASSOCIATION;
CITY OF SEAFORD;
MIKE BAILEY, in his official capacity;
MATT MACOY, in his official capacity; and
CHARLES ANDERSON, in his official capacity,
**Defendants.**

FILED
AUG 21 2026
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Lisa Kohlhagen, proceeding pro se, respectfully submits this Opposition to Defendants Lenape Properties Management, Inc. and Liborio Watergate, LLC's renewed Motion to Enforce Settlement Agreement and Motion to Dismiss Plaintiff's Amended Complaint.

Defendants' renewed motion should be denied because the complete contemporaneous record does not establish the simple offer-and-acceptance sequence portrayed in their motion.

Most importantly, the complete October 3, 2025 email chain demonstrates that Plaintiff never expressly waived monetary relief; defense counsel instead assumed that she apparently did not want money; Plaintiff expressly corrected that assumption only thirteen minutes after Defendants' purported acceptance; the parties continued discussing material settlement terms thereafter; and defense counsel ultimately stated that the parties could not agree and would have to litigate.

Defendants additionally rely upon subsequent changes, including transfer of HOA management and installation of an accessible pool lift, as evidence supporting dismissal. Those later events do not establish that the alleged prior violations did not occur or extinguish Plaintiff's claims arising from the earlier period.

## I. APPLICABLE LAW

Settlement agreements are contracts and are evaluated according to ordinary principles of contract law. Under Delaware law, whether an agreement exists depends upon whether a reasonable negotiator would conclude that the parties reached agreement upon the terms they themselves regarded as essential and intended to conclude their negotiations. Trexler v. Billingsley, 166 A.3d 101 (Del. 2017); Leeds v. First Allied Connecticut Corp., 521 A.2d 1095, 1097 (Del. Ch. 1986).

An enforceable agreement requires agreement upon all material terms. Courts apply an objective standard and consider the parties' contemporaneous words and conduct in determining whether they manifested an intent to be bound. Eagle Force Holdings, LLC v. Campbell, 187 A.3d 1209, 1229-30 (Del. 2018).

The party seeking enforcement bears the burden of establishing the existence and terms of the alleged agreement. United Health Alliance, LLC v. United Medical, LLC, 2013 WL 6383026 (Del. Ch. Nov. 27, 2013).

Those principles are particularly important here because Defendants' argument depends upon treating one portion of a continuing email exchange as the point at which negotiations conclusively ended.

## II. DEFENDANTS' PRIOR FEDERAL MOTION TO ENFORCE THE ALLEGED SETTLEMENT WAS DENIED WITHOUT PREJUDICE TO RENEW

Defendants previously sought enforcement of the alleged settlement and dismissal of this action. The federal Court denied that request without prejudice to renew. Defendants have now renewed their request.

Accordingly, there is no prior federal order presently enforcing the October 3 communications as a settlement terminating this action. The Court should consider the renewed request based upon the complete record now presented.

## III. THE COMPLETE OCTOBER 3 EMAIL CHAIN SHOULD BE CONSIDERED

Defendants characterize the October 3 communications as an offer by Plaintiff, acceptance by Defendants, and Plaintiff's subsequent attempt to add monetary relief. Plaintiff respectfully disputes that characterization.

The communications occurred as part of a continuing settlement discussion on the same day. Defendants' own contemporaneous communications demonstrate that material matters continued to be discussed after the communication they now characterize as final acceptance.

## IV. PLAINTIFF NEVER STATED THAT SHE WAIVED MONETARY RELIEF

At approximately 10:27 a.m., Plaintiff identified matters she believed were necessary for resolution, including acknowledgment and apology, commitments against future discrimination or retaliation, and corrective accessibility measures. Plaintiff further stated that if no reasonable resolution were offered, she was prepared to proceed with depositions.

Plaintiff did not state that she was abandoning or waiving monetary relief.

At approximately 10:52 a.m., defense counsel interpreted Plaintiff's communication by writing:

> *"it looks like now she doesn't want money."*

Those were counsel's words and counsel's interpretation. They were not Plaintiff's words. This distinction is material because Defendants' present settlement theory depends substantially upon treating Plaintiff as having offered to resolve her claims without monetary relief.

## V. THE CONTEMPLATED RELEASE AND OTHER TERMS WERE STILL BEING DISCUSSED

At approximately 11:03 a.m., the communications discussed obtaining a release from Plaintiff and separately addressing the contemplated commitment and apology.

At approximately 11:18 a.m., counsel advised Plaintiff that Defendants were willing to resolve the matter and that an appropriate release would be sent. At that point, no release had been executed by Plaintiff.

Plaintiff does not contend that the absence of a signed release alone necessarily defeats contract formation. Rather, it is part of the complete contemporaneous record demonstrating what matters remained under discussion.

## VI. ONLY THIRTEEN MINUTES LATER, PLAINTIFF EXPRESSLY CORRECTED DEFENSE COUNSEL'S ASSUMPTION ABOUT MONEY

At approximately 11:31 a.m., only thirteen minutes after the purported acceptance, Plaintiff expressly stated:

> *"I want to be clear that I am not refusing monetary relief"*

Plaintiff further explained that she remained open to discussing settlement if sufficient information and meaningful cooperation were provided and that she was willing to negotiate in good faith.

This was not a new communication occurring weeks or months after a completed settlement. It occurred thirteen minutes later in the same continuing exchange. Under Trexler, Leeds, and Eagle Force, Plaintiff respectfully submits that this contemporaneous clarification is relevant to whether the parties objectively manifested agreement upon all terms they regarded as material.

## VII. DEFENSE COUNSEL CONTINUED DISCUSSING RESOLUTION AFTER THE PURPORTED ACCEPTANCE

The communications continued after Plaintiff's clarification. At approximately 11:46 a.m., counsel proposed putting the matter on hold until his return so the parties could:

> *"discuss this fully"*

and hopefully resolve the dispute amicably.

At approximately 12:01 p.m., counsel again stated that the parties could discuss the matter upon his return. At approximately 12:25 p.m., Plaintiff stated that any settlement must provide a

meaningful benefit to her or she would not agree. At approximately 1:51 p.m., defense counsel stated that Plaintiff would have to dismiss the lawsuit and release Lenape.

The parties therefore continued discussing matters concerning settlement, cooperation, dismissal, release, and consideration after the purported acceptance.

## VIII. DEFENSE COUNSEL ULTIMATELY STATED THAT THE PARTIES COULD NOT AGREE AND WOULD HAVE TO LITIGATE

At approximately 2:29 p.m., defense counsel stated:

> *"It does not look like we can agree so I assume we will have to litigate."*

Plaintiff then immediately began discussing depositions. Counsel responded regarding subpoenas, a court reporter, and a mutually agreeable location.

This statement was made by Defendants' own counsel only hours after the 11:18 a.m. communication that Defendants now characterize as creating a binding settlement. Plaintiff respectfully submits that counsel's contemporaneous statement is significant evidence concerning whether the parties objectively understood that negotiations had concluded and a final agreement had been reached.

## IX. THE COMPLETE CHAIN PRESENTS A MATERIALLY DIFFERENT RECORD FROM DEFENDANTS' CHARACTERIZATION

1. Plaintiff did not expressly waive monetary relief;
2. defense counsel assumed Plaintiff apparently did not want money;
3. Defendants communicated a purported acceptance based upon the ongoing exchange;
4. Plaintiff expressly corrected the monetary assumption thirteen minutes later;
5. counsel continued discussing resolution, dismissal, cooperation, and release;
6. Plaintiff stated that she would not agree unless settlement provided a meaningful benefit;
7. counsel continued identifying conditions for dismissal and release; and
8. counsel ultimately stated that the parties could not agree and would have to litigate.

Plaintiff respectfully submits that this evidence does not establish the straightforward completed agreement portrayed in Defendants' renewed motion. At minimum, the complete contemporaneous communications must be considered in determining whether mutual assent existed as to all material terms.

## X. THE RELATED TRACY SPARKS PROCEEDING SHOULD BE CONSIDERED IN ITS COMPLETE PROCEDURAL CONTEXT

Plaintiff acknowledges that the Delaware Court of Common Pleas entered an order accepting the Commissioner's recommendation concerning enforcement of the disputed settlement. Plaintiff does not seek to misstate that ruling.

Defendants, however, characterize that proceeding as ended and closed in support of their preclusion argument. Plaintiff respectfully submits that the proceeding has a subsequent procedural history, including a stay while the federal litigation proceeds.

Plaintiff therefore requests that this Court consider the complete current procedural posture of the related action rather than relying solely upon Defendants' description of an earlier procedural status.

## XI. MEARFIELD HOMEOWNERS ASSOCIATION WAS ADDED THROUGH THE AMENDMENT PROCESS AUTHORIZED BY THIS COURT

Plaintiff sought leave to add Mearfield Homeowners Association as a Defendant. The Court granted Plaintiff leave to amend for that purpose.

Plaintiff's Amended Complaint therefore identifies Mearfield Homeowners Association as a Defendant and alleges responsibilities concerning the common elements and amenities. Plaintiff further states that the docket reflects service upon the Association.

Accordingly, Mearfield HOA's presence in this litigation resulted from the amendment process authorized by this Court.

## XII. THE SUBSEQUENT TRANSFER OF HOA MANAGEMENT DOES NOT EXTINGUISH CLAIMS ARISING FROM THE EARLIER PERIOD

Defendants rely upon the fact that Mearfield HOA is now managed by The HOA Managers, LLC. Plaintiff does not dispute that management changed.

The documentary evidence establishes that on August 27, 2025, Thomas Keats informed Plaintiff that his firm was Mearfield's:

> *"new management contact"*

and stated:

> *"We're currently transitioning into the role."*

The management arrangement therefore changed during the course of the disputes and litigation concerning Plaintiff's accessibility complaints. The transfer does not establish that alleged earlier conduct never occurred or that entities exercising authority during the earlier period are relieved of potential responsibility for that period.

Plaintiff does not seek to impose liability upon The HOA Managers, LLC merely because it subsequently assumed management responsibilities.

## XIII. THE MANAGEMENT TRANSITION WAS ALREADY UNDERWAY BEFORE THE ALLEGED OCTOBER 3 SETTLEMENT

The timing is also relevant to Defendants' assertion that subsequent management changes demonstrate performance of the alleged settlement.

The written record establishes that The HOA Managers was already transitioning into management on August 27, 2025. The settlement communications Defendants seek to enforce occurred on October 3, 2025.

Thus, the documented management transition was already underway before the alleged October 3 settlement. Plaintiff respectfully submits that a management transition already underway before

the alleged settlement should not, without further evidence, be treated as subsequent performance of an obligation supposedly created by that settlement.

## XIV. THE RECENT INSTALLATION OF THE POOL LIFT DOES NOT EXTINGUISH CLAIMS CONCERNING THE PRIOR PERIOD OF INACCESSIBILITY

Plaintiff acknowledges that an accessible pool lift has now been installed. Plaintiff states that the lift was installed approximately one month ago.

Plaintiff does not contend that the newly installed lift is presently absent. Rather, Plaintiff's allegations concern the period during which the pool allegedly lacked accessible entry despite Defendants' notice and Plaintiff's requests for accessibility.

The subsequent installation does not establish that the alleged earlier denial of access did not occur or automatically eliminate claims for damages allegedly resulting from that period.

## XV. THE JULY 31 COMMUNICATIONS PROVIDE ADDITIONAL CONTEXT CONCERNING PLAINTIFF'S EFFORTS TO PROCEED AGAINST AND SERVE THE HOA

The circumstances surrounding Plaintiff's efforts to proceed against and serve Mearfield HOA provide additional context.

On July 31, 2026, Plaintiff informed counsel that she was attempting to determine the appropriate address for service. Plaintiff explained that, after multiple attempts to obtain an accurate service address, she intended to request authorization for the United States Marshals Service to attempt service at the locations where she reasonably believed service could be accomplished. Plaintiff also advised that counsel could avoid that process by providing the correct service address or accepting service through appropriate counsel.

At 2:51 p.m., counsel responded:

> *"You understand that the HOA will have to hire an attorney and to do so will have to levy and collect additional fees to pay the attorney to defend your frivolous suit"*

Plaintiff responded, "And...." Counsel then immediately followed with the additional statement:

> *"And you are hurting your neighbors for no valid reason."*

Plaintiff submits these communications to provide the Court with the complete contemporaneous context surrounding her efforts to proceed against and serve the HOA.

Plaintiff does not ask the Court to speculate about counsel's subjective intent or to decide a separate claim based solely upon these emails. Rather, Plaintiff submits the communications because they occurred directly in connection with Plaintiff's attempt to continue litigation and accomplish service upon an entity she had sought leave to add.

## XVI. THE JULY 31 COMMUNICATIONS ARE ALSO RELEVANT TO THE CONTEXT OF PLAINTIFF'S EXISTING FHA INTERFERENCE AND RETALIATION ALLEGATIONS

The Fair Housing Act provides that it is unlawful to "coerce, intimidate, threaten, or interfere with" a person on account of that person's exercise or enjoyment of rights protected by specified provisions of the FHA. 42 U.S.C. § 3617.

The Third Circuit has addressed § 3617 in Revock v. Cowpet Bay West Condominium Association, 853 F.3d 96, 112-13 (3d Cir. 2017), including claims involving alleged interference connected to the exercise of rights protected by the FHA.

Plaintiff does not ask the Court, through this Opposition, to determine that counsel's emails independently establish a § 3617 violation. Instead, Plaintiff submits them as contemporaneous evidence relevant to the context of Plaintiff's existing allegations of interference and retaliation and to demonstrate the communications Plaintiff received while attempting to continue pursuing her claims against the HOA.

The timing and contents of those communications can be evaluated by the Court together with the remainder of the record.

## XVII. THE FEDERAL CLAIMS ARE NOT BASED SOLELY UPON THE CONDUCT OF TRACY SPARKS

Plaintiff's Amended Complaint alleges responsibilities and conduct involving multiple entities and officials. Plaintiff alleges responsibilities involving Lenape, Liborio Watergate, Mearfield HOA, and separately the municipal Defendants.

The federal action therefore extends beyond Plaintiff's individual state-court claims involving Tracy Sparks. The existence of proceedings involving Sparks does not, standing alone, establish that all claims against all Defendants in this action have been resolved.

## XVIII. ANY TECHNICAL DEFICIENCY IN THE AMENDED COMPLAINT SHOULD BE PERMITTED TO BE CURED RATHER THAN RESULT IN DISMISSAL

Defendants also challenge Plaintiff's Amended Complaint on procedural and pleading grounds. Plaintiff did not intend to disregard the Court's amendment order.

Plaintiff sought to add Mearfield HOA while organizing and clarifying the allegations concerning the respective roles of the Defendants.

If the Court determines that Plaintiff's Amended Complaint exceeded the authorized scope, lacks a required redline, contains paragraph-numbering deficiencies, or otherwise fails to comply technically with the Court's instructions, Plaintiff respectfully requests leave to cure the deficiency rather than dismissal of the action.

Plaintiff is prepared to promptly submit a corrected pleading conforming precisely to the Court's instructions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

**A.** DENY Defendants' renewed Motion to Enforce Settlement Agreement;

**B.** DENY Defendants' Motion to Dismiss Plaintiff's Amended Complaint;

**C.** consider the complete October 3, 2025 email chain rather than isolated portions of the continuing settlement discussion;

**D.** consider that Plaintiff never expressly waived monetary relief and expressly clarified thirteen minutes after Defendants' purported acceptance that monetary relief remained part of the negotiations;

**E.** consider the parties' continued discussions concerning settlement, cooperation, dismissal, release, and consideration;

**F.** consider defense counsel's subsequent contemporaneous statement that the parties could not agree and would have to litigate;

**G.** consider the complete procedural posture of the related Tracy Sparks proceeding;

**H.** recognize that Mearfield Homeowners Association was added through the amendment process authorized by this Court;

**I.** recognize that the subsequent transfer of HOA management does not extinguish claims arising from the earlier period;

**J.** recognize that the documented management transition was underway before the alleged October 3 settlement and therefore should not, without further evidence, be treated as performance of that alleged settlement;

**K.** recognize that the recent installation of the pool lift does not eliminate claims concerning the alleged prior period of inaccessible use or resulting damages;

**L.** consider the complete July 31, 2026 communications concerning Plaintiff's efforts to proceed against and serve the HOA in the context of the record and Plaintiff's existing allegations; and

**M.** alternatively, permit Plaintiff to promptly cure any technical deficiency in the Amended Complaint rather than dismissing this action.

Respectfully submitted,

Lisa Kohlhagen
Plaintiff, Pro Se
[Address]
[Telephone]
[Email]

Date: ______________________